Good morning, Your Honors. Eric Field on behalf of Dicom Industries. Dicom was the parent of Midtown Express, who was a broadband installation contractor that installed broadband utilities throughout the New York City area. Broadband employees would do all the labor necessary to install parts, equipment, cable, to provide Time Warner Cable Company clients with broadband services. Depending on the projects, this work would entail dropping new cable lines all the way from the tab. Mostly weren't they coming in and plugging in a wire so that the household could have services, television services? In every case, they were installing broadband equipment to provide services. Wasn't that their job, really? With a few exceptions, I'm sure you know. If there's a mousetrap in the way they push it over, it doesn't make a mousetrap. It really depended on the project. They were all trained to do everything that was necessary, but some homes... Let's see if we can agree on what the definition is. Let me take a step back. We'll come back to that. I'm looking at your reply on page 5. You agree that the Indio paint definition, which is combining materials and constituent parts on the building site to form, make, build, or alter or repair a new or existing structure, you agree that that is the proper formulation that we should use? Yes, Your Honor. There is no definition under ERISA, but the two cases have all pointed to Indio paint. All right. So if we use that definition, if we go back to Judge Zaks' question, is if in fact... Let's see if we can figure out where you think the line is. If they are plugging in a compartment and they basically take a plug that's already there, plug it into a converter box, you would agree that that's not construction under that definition, building or construction, right? Well, first I'd say that's not every project, but I would also disagree... We'll get to that. But I would also disagree that's not construction, because with every project, they still have to check to make sure that the existing cable is sufficient. They're still taking some parts of fasteners, fixers, couplings, they're still connecting the cable box, which is equipment, and they're absolutely... That's completely consistent with what Adderley, the NLRB said in the Adderley case, right? They specifically said that if you're just connecting something, you're not laying down new wiring, right? So you wouldn't be going against what the NLRB said in that case, right? Well, a couple of things. In Adderley, that was... There was no description of what work was done beyond just plugging in a cable box. There was no description of... It says they were just installing things, so we can imagine what that means, right? Well, but installation is construction. Just looking... Not according to the NLRB in Adderley, right? They said installation is not construction in that case, right? But there's other federal authority that would disagree, namely the NAICS that's put out by the U.S. Census Bureau that says cable contracting, telecommunications line installation is construction. And more recently, the Department of Labor updated its Davis-Bacon regulations, and that specifically say broadband installation is construction. I know, but I want to go to that because I spent some time looking at that. The Davis-Bacon Act defines... This is what under 3140 today, what its phrasing is, construction, alteration, or repair, including painting and decorating of public buildings and public works. So why should we look to a Department of Labor guidance on statutory language like that that is nowhere in existence with respect to ERISA or TEFT-Hartley? I actually don't disagree, Your Honor. I raised Davis-Bacon because that was the bulk, if not all, of the argument. It makes no sense because under that, painting and decorating is considered... Well, and painting and decorating would be construction for purposes of ERISA. If someone comes in and paints an apartment, you think that's the building and construction industry? Painting, well, there are multi-employer pension plans that cover the painting industry, and they have held themselves out to be the reason why ERISA exempts construction from withdrawal liability in the first place. The whole purpose, and this is in the legislative history, the reason the rule exists is that it's work that is tied to the geographic location, meaning if I'm a contractor, if I leave the area, another contractor is going to come in and take over my work, and that contractor is most likely going to contribute to the same work. If I have cable and broadband installed in New York City, the work has to be done in New York City. I can't take that work with me. And that's exactly what happened here. Midtown left, another cable company came in, the funds to witnesses both testified that they went to work for this new company, they worked on Staten Island still, they're still doing the same work, and they're still getting contributions to this pension plan. So that's why you have the construction rule, because the plan's not harmed. In fact, if you looked at the government filings cited in our brief, the active participants in this particular plan actually went up the year after Midtown left. So Midtown departure didn't cause a reduction in contributions at all, didn't cause a reduction in active participants, and that's why you have the construction rule. I thought it's that building and construction tend to be more transient projects, and a company that does installations for Time Warner for a number of years does not have this sort of come and go issue. That isn't a requirement in ERISA. Some cases have raised that, but I would say that this work is very transient. It's true that Midtown's only client was Time Warner, but it's also true that Midtown would do hundreds of jobs every day. A project would start and stop, it could be a 30-minute project, it could be a two-hour project, but then they would move on to the next project. They would be getting thousands of work orders. So these absolutely were short-term, temporary, each job was a short-term, temporary project because they came to an address, they installed the broadband. I guess I was just taking issue with your characterization of the purpose for this exemption, which is, I think, the nature of the industry, and here, Midtown was servicing Time Warner, I forget the use of projects, but Time Warner customers for a number of years, which is different from a building and construction company that builds a skyscraper and then disappears and the workers go do another project. That is part of the rationale for the rule, but when you tie it into why would a multi-employer plan not need to assess withdrawal liability for transient work or project work? It's because that work has to be done in the geographic location of the CDA. Whether I'm building a skyscraper or I'm installing broadband, I am bound to do that work where the work has to be installed. I can't install a customer's broadband in Newark if the customer is in New York. So if I leave, another contractor is coming in and is going to do that work, and that contractor is going to contribute to the same plan I contributed, probably to the same employees, so the plan isn't harmed. That's why you don't have to assess withdrawal liability, because the plan is getting the contributions anyways. It's no different. Okay, so but going back to the work, your characterization of the work that Midtown did is primarily running wire, connects and disconnects, and I guess incidental to that would be having to go into walls and do sort of alteration work. Is that a fair characterization? I would define alteration more broadly than altering the physical structure. The alteration is also the fact that before I did the work, this part of the building wasn't able to get this broadband product. After I completed this work, the building was able to get the broadband product. And the work is primarily running wires, and sometimes that means running wires through walls, in walls, but often not. It could be outside the wall. Again, it depends on what the customer wants, but every job requires installing some equipment. I mean, it might be the modem, the cable box, but you're still altering the structure physically because you're adding equipment, which So if someone came in and took an air conditioning unit and put it in a window and plugged it in from, you know, from a store, that would be doing building and I'm not combining. You just said if you bring something in, you're putting something on the structure that wasn't there before. But with cable installation, you are combining parts. You have cable, you have fasteners, you have clips, you have the actual box. If I was just, if it was just plugging in the box, maybe, but it's not. You're connecting the box to the structure through wiring that That's a definition of building and construction I've never heard before. I mean, forget about the NLRB, like the plain meaning of that term. Who would ever think of someone who's involved in that being in the building and construction industry? Nobody would think that, right? But that's not really what the issue is. The issue is, is that for a risk of withdrawal liability, it doesn't make sense to assess withdrawal liability where my work is tied to geographic location. I am combining parts. I am altering the building by providing a new utility. The building or the apartment? Well, it could be a residential home if you're talking about Staten Island. In Manhattan, you're talking about an apartment. But nothing says construction has to be the whole building. It could just be a unit in the building. I have been trying to resist this, and so you'll forgive me, but I have just suffered through a major reconstruction of a part of my apartment. After that, we had another television set, and one had to be, the wiring had to be changed, and so on and so forth. My wife did all of that. She did construction work. And today, it is getting simpler, and especially with streaming, you don't need as much construction work as before, and maybe if it's off stream, you don't need any. Someone who puts a flat screen TV in someone's apartment would be a construction worker, too, then, right? Because they've got to take, maybe they need some clamps and wires. They've got to hook the TV into a cable box. So that TV installer would be a construction worker, too. That precise work could be construction for arrested purposes, but the employer might not be eligible for the rule because it depends what the employer does. If Best Buy sends a Best Buy employee to install your TV, Best Buy is not a construction employer. It's a retail employer. But if Best Buy hires a subcontractor, and all that subcontractor does is installation work, and the installation work requires them to combine parts and materials to alter the structure, then that's construction. What case do you have anywhere in the United States that has ever said that type of installation qualifies for the exemption? There is virtually no cases on the construction industry exemption whatsoever. I mean, the closest would be if I'm working in the road oils case. The closest would be Adderley, which goes against you. But that's an NLRB administrative logic. No federal court has. And that predates Davis-Bacon. And again, I'll just finish with think of the purpose of the rule and the classification of cable contracting as construction under the NAICS, which is guidance put out by the Census Bureau. All right. Thank you. You're losing your voice, so it's good you ran out of time, right? Thank you. All right. We have Mr. Murphy. Good morning, Your Honors. And actually, unfortunately, you stole my example that I was going to use, which is the arbitrator decided here and were bound by that decision because the magistrate adopted the arbitrator's factual findings, and there was no objection to that portion of the report and recommendation. Found that 90% of the buildings that were worked on were already hooked up for cable, and so there was no actual installation of any telecommunications. So for 90%, it was just adding a box? For 90%, it was just adding a box. They said that for many of these, it was simply just plugging a wire into a wall and plugging that into a cable box, which is exactly the same as putting a television on a table and plugging a power cable into the wall. There is no conceivable way that any of this work could be considered construction. Notably, throughout the briefing from the employer here, there is no citation to any definition of alteration of a building that would include altering it to provide broadband to a particular apartment. We cited to New York City Administrative Code, which says that if you're altering an apartment or altering a building, you have to get a permit for it. Well, what about the other 10%? So for 10% of the installations, the other 10% were buildings that were not hooked up to cable previously. There was an installation of wire, as testified to by a defendant's witness. They would have to sometimes climb a pole to run a wire from a tap to the building and drill a hole into the building. And perhaps that might fall within the Davis-Bacon regulations that the employer is relying on now, where they say that the installation of telecommunications and high-speed data into a building, into new construction, or potentially into existing construction, might be something that would fall within Davis-Bacon. As Your Honor said, neither the arbitrator nor the magistrate nor the district judge relied on any of these authorities with respect to Davis-Bacon. But even absent Davis-Bacon, you could have that be, under Indio, an alteration. Why isn't when you're drilling a hole into a wall, why isn't that an alteration of the structure? Well, in this instance, the term alteration isn't defined in the statute. So we have to look to where it is defined. And a construction contractor under New York law has to have a construction permit, which they don't. They have to have a construction license, which they don't. They have to get permits for building alterations, which they never got here. There simply is no authority anywhere in the record that would say that drilling a hole from outside of a building into a building constitutes an alteration of that building. Normally, the term alteration, and if you look at the administrative code with respect to what types of permits are required, it talks about whether you're changing 40% of the square footage of a building versus 60% of the square footage of a building. Those alterations are not just different in degree from what was done here, but really different in kind. 20, 30 years ago, when buildings in the city were first being hooked up, and if Midtown were doing that business, that would be built for construction, wouldn't it? Potentially, well, we would say that if there's any new construction that's being pre-wired, which as was said in Adderley, where they were pre-wiring for telecommunications, that would potentially be construction. So what's the difference? 40 years ago, when they were going in and adding new wiring throughout a whole apartment building, you have to open up the walls. You have to run cable, not just through one drilled hole in the wall, but from the tap into every apartment in the building. That work would require carpentry because you would have to pull out the walls. It potentially could require rearranging high-voltage electrical wiring, plumbing. There's a lot of extra work that goes into completely installing an entire new subsystem in a building. None of that was done here. The extent of the installation in that 10%— I guess I don't know that we need to have a line, but it seems hard to find one between running some wire in walls and running a lot of wire in walls that requires other stuff that might bring it into building and construction. It seems like it should be either or. It's building and construction or it's not. As was stated, there's really not a lot of case law that defines what constitutes construction. The MBPA says it's what's in Taft-Hartley. Taft-Hartley case law doesn't really exist. When we're talking about alteration of a building, it's really what it comes down to. Did this work constitute alteration of a building? If you're drilling a hole in a wall, which again was less than 10%—I'm sorry, was a minority of the work that was done— Does that matter, though? Let's say 10% of the work, if we concluded that that was construction— I know there's a separate requirement regarding substantially all employees, but that's employee by employee. If someone—10% of their work was construction, doesn't that count? In Taft-Hartley, in 29 U.S.C. 158, subsection F—not paragraph F, subsection F— it refers to contractors that are primarily engaged in building and construction. So even if we have a situation where some small percentage of the work that they were performing was building and construction work, that wouldn't bring them within the ambit of a building and construction employer under Taft-Hartley. And there's the D.C. Circuits case in Rivkin, which talks about that in terms of a theater that employed carpenters and electricians and lighting techs. That were doing construction. And nobody disputed that the work that they were doing was skilled construction work, but because the employer's primary duty was as a theater and not as a builder of buildings and structures, they didn't fall within the ambit of the building and construction definition of Taft-Hartley. So here we have the overwhelming majority of the work that was performed simply was not construction work, to the extent that some of it may potentially, not necessarily, but may be considered to have been construction work. It was a small minority of the work that was performed, and it doesn't bring the employer within the ambit of an entity primarily engaged in the building and construction industry as required in subsection F of section A of Taft-Hartley, section 8 of Taft-Hartley. So I really think that the important thing that, you know, the plaintiffs really poo-poo this and put it to the side, but we're talking about workers who had, in many cases, no prior experience in this industry. In some cases, these workers were earning $1 above minimum wage. There was no hiring hall that these workers would come to, to the employer, and then go work for a different employer as is typical in the construction industry when you're building a new skyscraper, and you leave and you go work for a different contractor. These workers didn't have any kind of licensing. They didn't obtain any kind of permits. They didn't have any of the typical hallmarks of workers engaged in the construction industry. The plaintiffs assert that they were engaged in construction, but they don't cite to any authority whatsoever that would say that, yes, drilling a hole in the wall constitutes an alteration of a building, that putting a cable box into a room and connecting it to a wire constitutes installing equipment in a building sufficient to bring it within the definition of the building construction industry. There simply isn't any there. Can I ask you, they do say we should look to the NAICS, because IndioPaint, in part at least, relied on that. So what's your response to whether or not we should look to that? IndioPaint did cite to the predecessor regulations for the NAICS, but it certainly isn't controlling. That's data that's used by the Bureau of Labor Statistics for entirely different purposes. It's something that may be considered to be a factor. There's one case that has addressed whether that is a factor for whether or not a cable service company, such as the plaintiff here, is in the building construction industry, and the Northern District of New York in that case rejected that application. But it's really one of those things where, to the extent that it has any relevancy at all, it's certainly not determinative. And the probative value that it has, if it has any, is vastly outweighed by the fact that this work, under all of the existing case law, under all of the existing authorities, as a factual determination as made by the arbitrator here and as decided by the magistrate and district judge here, is not construction work. And Davis-Bacon, they did point out that you did say in the briefs that that's something we should look to, but the Department of Labor looks at Davis-Bacon much differently than you do. No, I actually dispute their characterization on that. Again, because none of the courts used this, I didn't bring it up. But the Davis-Bacon regulations, the new Davis-Bacon regulations, clarify that installing broadband, such as in the installation of a new building, when you have a broadband contractor come in and pre-wire, the same way that in Adderley they said that that would be something that may be in the building and construction industry, that that falls within the ambit of Davis-Bacon. I didn't see. What did it say, new building? It doesn't say new building, but it says the specific regulation says that construction, prosecution, completion, or repair, as opposed to service and maintenance work, which this was service and maintenance work that was being done. I really think that the indicative of the over breadth of that argument with respect to the Davis-Bacon regulations is on page 18 of their reply brief, they highlighted a section of 29 CFR 5.2 that talked about removal of equipment being something that would come within the ambit of Davis-Bacon. But if you look at that whole paragraph, it talks about asbestos remediation. It talks about lead paint remediation and lead piping remediation. It talks about hazardous material, substance of earth moving, removing of contaminated soil. These are much larger scale projects than removing a cable box from a building that's not receiving cable anymore. So it really is just a difference in not only degree, but in kind. All right. Thank you to both of you.